UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

LINDA HORTON, INDIVIDUALLY                                                                    Plaintiff
AND AS EXECUTRIX OF THE
ESTATE OF BARNEY HORTON, JR.

v.                                                                          Civil Action No. 3:25-cv-100-RGJ

GENERAL ELECTRIC COMPANY, ET                                                                Defendants
AL.

\* \* \* \* \*

**MEMORANDUM OPINION & ORDER**

This Court previously granted Plaintiff Linda Horton's ("Horton") motion to remand this action. [DE 20; DE 58]. Defendant General Electric Company ("GE") filed a Notice of Appeal [DE 59] and now moves for a stay pending appeal [DE 60].[1] Horton responded [DE 64], and GE replied [DE 65]. This matter is ripe. For the reasons below, GE's motion for a stay pending appeal [DE 60] is **DENIED** and this action is **REMANDED** to Jefferson Circuit Court.

I.  BACKGROUND

On November 21, 2024, Horton filed a civil lawsuit against GE and other defendants in the Jefferson Circuit Court. [DE 1]. That action was removed to this Court on February 20, 2025. [*Id.*]. Horton asserted various Kentucky law claims, including strict liability failure to warn, strict liability design/manufacturing defect, negligent failure to exercise ordinary care, negligent failure to warn, negligence per se, personal injuries, loss of consortium, and punitive damages. [*Id.*]. Horton's claims arose from the alleged exposure of Mr. Barney Horton, Jr. ("Mr. Horton") to

---

[1] Although Counsel to GE attached a Memorandum of Law in Support of the Emergency Motion to Stay and Prevent Transmission of Case File to State Court [DE 60-1], the Joint Local Rules for the Eastern and Western Districts of Kentucky contemplate a single, unified motion and memorandum. *See* Local Rule 7.1. In the future, Counsel is requested to file a unified motion.

asbestos-containing materials manufactured, sold, or utilized by GE and other defendants.[2] Horton alleged that as a result of such exposures, Mr. Horton suffered "diseases and injuries to his body system, lungs, and respiratory disorders, including malignant mesothelioma." [*Id.* at 35].

During discovery, GE learned that Mr. Horton "served in the United States Navy from 1968 to 1972," including two years of service aboard the "USS Cascade (AD-16)." [DE 1-3]. According to GE's records, the *USS Cascade* contained "one or more General Electric marine turbines." [DE 1 at 5]. GE timely removed this case to federal court pursuant to 28 U.S.C. § 1442(a). [*Id.* at 3]. With respect to the equipment GE provided to the U.S. Navy, GE asserted that its actions were undertaken "pursuant to government contracts and [it] was acting under an officer or agency of the United States." [*Id.* at 5]. According to GE, removal was required so that GE could raise a "government contractor defense" to Horton's claims arising out of GE's provision of turbines to the *USS Cascade*, as well as to any claims for apportionment from GE's co-defendants based on the same. [*Id.* at 5–8].

Horton subsequently filed the First Amended Complaint, which disclaimed and waived "any cause of action or recovery" for the following injuries:

> any injuries caused by or arising out of exposures, of any kind, to asbestos that occurred while Barney Horton, Jr. served in the U.S. Navy. . . [or] that occurred on any U.S. Naval ship or other military vessel, including the U.S.S. Cascade. . . [or] as a result of Barney Horton, Jr.'s work on, or in close proximity to others working on, marine turbines, boilers, generators, and insulation present on any U.S. Naval ship or other military vessel, including but not limited to the U.S.S Cascade.

---

[2] The state court case was captioned *Barney Horton, Jr. and Linda Horton v. General Electric Company, et al.*, Civil Action No. 24-CI-008335. [*See* DE 1-2]. After removal, on March 19, 2025, Horton filed a notice advising that Barney Horton, Jr. was deceased. [DE 13]. On June 6, 2025, this Court granted Horton's request to substitute Linda Horton, Executrix of the Estate of Barney Horton, Jr., for Plaintiff Barney Horton, Jr., as the proper plaintiff-party to this action. [DE 18].

2

[DE 19 at 360]. Having waived any claims for damages caused by, or arising from, Mr. Horton's exposure to asbestos while in the Navy, including from GE's equipment on board the *USS Cascade*, Horton moved to remand this action back to state court. [DE 20].

On October 15, 2025, the Court granted in part and denied in part Horton's Motion for Remand or in the Alternative Motion to Sever, and Request for Attorneys' Fees and Costs. [DE 58]. The Court ordered this action remanded to the Jefferson Circuit Court after finding that GE could not assert a colorable federal defense, but declined to award attorney's fees and costs against GE because "at the time of removal, Horton's claims against GE were . . . not expressly limited to exposure within Kentucky, and there was [] no waiver of claims against GE to which the government contractor defense could plausibly apply." [*Id.* at 775–76 (the "Remand Order")]. The same day, GE filed the Notice of Appeal [59] and the Emergency Motion to Stay and Prevent Transmission of Case File to State Court [60].³ Pursuant to Federal Rule of Civil Procedure 62(a), the Court granted GE's request for a 30-day stay until November 15, 2025 and set the matter for briefing on GE's request for a stay pending appeal of the Remand Order. [DE 61].

## II.   DISCUSSION

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). That power is discretionary—it "calls for the exercise of judgment, which must weigh competing interests" in each particular case. *Id.* at 254–255. As the movant, GE "bears the burden of showing that the circumstances justify" this Court's exercise of discretion to grant a stay of the

---

³ Although orders remanding a case to state court are generally not appealable, 28 U.S.C. § 1447(d) provides an exception when "an order remanding a case to the State court from which it was removed *pursuant to section 1442 or 1443 of this title*." (emphasis added). As discussed above, GE removed this case to federal court pursuant to 28 U.S.C. § 1442(a). [*See* DE 1].

3

Remand Order pending appeal. *Nken v. Holder*, 556 U.S. 418, 433–34 (2009). The Court must consider four factors: (1) whether GE has a likelihood of success on the merits; (2) whether it will suffer irreparable harm in the absence of a stay; (3) whether the requested injunctive relief will substantially injure other interested parties; and (4) where the public interest lies. *Id.* at 434. These four factors "are not prerequisites that must be met, but interrelated considerations that must be balanced." *In re EPA*, 803 F.3d 804, 806 (6th Cir. 2015). However, the first two factors, the likelihood of success on the merits and irreparable harm, "are the most critical." *Nken*, 556 U.S. at 434.

Notwithstanding the discretionary test articulated in *Nken*, GE asserts that Supreme Court's holding in *Coinbase Inc. v. Bielski*, 599 U.S. 736 (2023) means that "GE's appeal automatically stays the Court's Remand Order." [DE 60-1 at 785]. Plaintiffs disagree, contending that the *Coinbase* holding is limited to the context of "arbitration appeals under § 16(a) of the Federal Arbitration Act." [DE 64 at 804]. Thus, before reaching whether a discretionary stay is warranted, the Court must consider whether *Coinbase* mandates a stay.

In *Coinbase*, the Supreme Court held that a district court is "require[d]" to enter an "automatic stay" pending appeal when a party exercises its statutory right under 9 U.S.C. § 16(a) ("The Federal Arbitration Act") to an interlocutory appeal of the denial of a motion to compel arbitration. 599 U.S. at 742–44. In so ruling, the Court relied on *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56 (1982), which held that an "appeal, including an interlocutory appeal, 'divests the district court of its control over those aspects of the case involved in the appeal.'" *Id.* at 740 (quoting *Griggs*, 459 U.S. at 58). Because the question on appeal in the FAA context "is whether the case belongs in arbitration or instead in the district court, the entire case is essentially 'involved in the appeal.'" *Id.* at 741 (quoting *Griggs*, 459 U.S. at 58). Accordingly, a stay of lower

4

court proceedings pending appeal is mandatory when a district court denies a motion to compel arbitration. *Id.*

Courts are split on whether *Coinbase* requires courts to grant an automatic stay pending an interlocutory appeal of remand orders where the case was originally removed under the officer removal statute. Most courts of appeal that have considered the issue, including the Ninth Circuit, have held that "*Nken*, and not *Coinbase*, provides the proper standard for assessing Defendants' request for a stay of the state court proceedings." *California by & through Harrison v. Express Scripts, Inc.*, 139 F.4th 763, 773 (9th Cir. 2025) (citing *City of Martinsville, Virginia v. Express Scripts, Inc.*, 128 F.4th 265, 275 (4th Cir. 2025) (Wynn, J., dissenting)). *See also County of Westchester, et al., v. Express Scripts, Inc., OptumRx Inc.*, 24-1639 (2nd Cir. Sep. 6, 2024) ("Appellants are not entitled to an automatic stay pending appeal under *Coinbase, Inc. v. Bielski*, 599 U.S. 736 (2023)"); *AG of N.J. v. Dow Chem. Co.*, 24-1753 (3rd Cir. July 24, 2024) (denying motion to stay pending appeal where movants argued *Coinbase* mandated a stay); [DE 64 at 805 (collecting cases)]. In contrast, only the Fourth Circuit has reached the opposite conclusion—that *Coinbase* applies "to appeals under the federal-officer removal statute." *City of Martinsville, Va. v. Express Scripts, Inc.*, 128 F.4th 265, 272 (4th Cir. 2025). *Accord Town of Pine Hill, Alabama v. 3M Co.*, No. CV 2:24-00284-KD-N, 2025 WL 994187, at *3 (S.D. Ala. Apr. 2, 2025) ("[T]he execution of the remand order is stayed until the appeal [under 28 U.S.C. § 1447(d)] is complete."); *Kansas v. Pfizer, Inc.*, No. 24-1128-DDC-BGS, 2025 WL 1394240 (D. Kan. May 14, 2025). The Sixth Circuit has not taken a position on this issue.[4]

---

[4] However, it has recognized that "'[t]he filing of a [timely] notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court over those aspects of the case involved in the appeal.'" *Greiner v. Macomb Cnty.*, No. 19-1055, 2019 WL 7563738, at *1 (6th Cir. Feb. 22, 2019) (quoting *Griggs*, 459 U.S. at 58)); *see also United States v. Carman*, 933 F.3d 614, 617 (6th Cir. 2021).

GE argues that this Court should follow *City of Martinsville*, in which the Fourth Circuit reasoned that "*Coinbase* did not discriminate between arbitration and other appeals" in holding that the "*Griggs* principle" applies upon filing of a notice of an interlocutory appeal. 128 F.4th at 269, 271. The Fourth Circuit concluded that "if the issue being appealed is whether the district court can send this case back, the district court cannot [send the case back] before the appeal is resolved." 128 F.4th at 271.

Contrary to the Fourth Circuit's reasoning, however, the "sole question" before the Court in *Coinbase*, was "whether a district court must stay its proceedings while the interlocutory appeal on arbitrability is ongoing." 599 U.S. at 740. *See also id.* at 761 (Jackson, J., dissenting) ("Today's holding reaches only arbitration appeals under § 16(a). And it might well be that the concerns motivating today's mandatory-general-stay rule do not extend beyond arbitration."); *City of Martinsville, Virginia v. Express Scripts, Inc.*, 128 F.4th 265, 272 (4th Cir. 2025) (Wynn, J., dissenting) ("With respect, I would accept the Supreme Court's holding in *Coinbase* for what it is, a narrow exception for arbitrability appeals, and nothing more."). To be sure, the rationale of *Coinbase* is binding upon lower courts "even if some immaterial facts differ." *City of Martinsville*, 128 F.4th at 271. But that is not the case here.

The interlocutory appeal in this case is materially different from the appeal in *Coinbase* for several reasons. First, as noted by the Ninth Circuit, there are "fundamental differences between arbitration and litigation" which "do not exist as between litigation in state versus federal courts." *Harrison*, 139 F.4th at 770 ("Though state and federal courts may operate in slightly different ways, each provide forums for litigation with roughly similar levels of efficiency, expense, and comprehensive discovery mechanisms. Having to continue litigation in state court for a brief period pending appeal does not cause defendants to 'irretrievably lo[se]' any benefits of the type

6

lost when being wrongfully forced to arbitrate."). And second, unlike in *Coinbase*, in the absence of a stay, this case will not proceed in this Court. While the *Griggs* principle "divests the district court of its control over those aspects of the case involved in the appeal," 459 U.S. at 56, here it is the state trial court which would oversee the case on remand. Moreover, the question on appeal (whether the GE has a colorable federal defense such that this forum is proper) differs from questions remaining before the state court, such as whether the remaining (non-federal) claims and defenses have merit, whether the parties are entitled to the discovery they seek, and so on. *See Harrison v. Express Scripts, Inc.*, 139 F.4th 763, 771 (9th Cir. 2025) ("Those proceedings, in other words, do not implicate the *Griggs* principle, which addresses the 'danger a district court and a court of appeals would be simultaneously analyzing the same judgment.'").

The Court therefore declines to follow the Fourth Circuit in expanding *Coinbase* beyond the context of arbitration. Instead, the Court will "follow the case which directly controls" and "leav[e] to [the Supreme] Court the prerogative of overruling its own decisions." *Harrison*, 139 F.4th at 768 (quoting *Agostini v. Felton*, 521 U.S. 203, 237 (1997)).[5] Relevant here, courts in the Sixth Circuit apply the *Nken* factors to requests for discretionary stays pending appeal of remand orders involving cases removed under the federal officer removal statute. *See, e.g., Mays v. City of Flint, Mich.*, No. 16-2484, (6th Cir. Jan. 13, 2017) (order denying motion to stay) (applying *Nken* factors to motion for stay pending appeal of remand order of case removed under the federal-officer removal statute). *See also Doe v. Univ. Health Sys., Inc.*, No. 3:23-CV-357-KAC-DCP,

---

[5] Indeed, such an expansive interpretation would be at odds with the Supreme Court's own longstanding precedent that a stay pending appeal is an extraordinary remedy. *See Nken*, 556 U.S. at 427 ("A stay is an intrusion into the ordinary processes of administration and judicial review . . . and accordingly is not a matter of right . . . .") (citation modified); *id.* at 437 (Kennedy, J. concurring) ("A stay of removal is an extraordinary remedy that should not be granted in the ordinary case, much less awarded as of right."); *Donald J. Trump for President, Inc. v. Sec'y of Pennsylvania*, 830 F. App'x 377, 389 (3d Cir. 2020) ("Injunctions pending appeal, like preliminary injunctions, are extraordinary remed[ies] never awarded as of right.") (citation modified).

2024 WL 3050367, at *1 (E.D. Tenn. Mar. 15, 2024). Thus, the Court evaluates the *Nken* factors in determining whether to stay the case pending appeal.

    *1. GE has no likelihood of success on the merits.*

The sole issue on appeal is whether GE can assert a "government contractor defense" to Horton's claims for asbestos exposure even though Horton amended her complaint to exclude any claims arising from Mr. Horton's exposure to asbestos in the Navy. If GE cannot assert a federal defense, removal is improper. *Mesa v. California*, 489 U.S. 121, 124–25, 134–35 (1989). While it is true that GE need not establish "a high probability of success on the merits" *Mich. Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153-54 (6th Cir. 1991), the Sixth Circuit has treated the first factor as dispositive when a movant fails to show any likelihood of success. *See Luxshare, Ltd. v. ZF Auto. US, Inc.*, 15 F.4th 780, 783 (6th Cir. 2021) ("Given that the [movant] is unlikely to succeed on the merits, we need not consider the remaining stay factors.") (quoting *Tiger Lily, LLC v. U.S. Dep't of Hous. & Urb. Dev.*, 992 F.3d 518, 524 (6th Cir. 2021)). *See also Wilde v. Huntington Ingalls, Inc.*, 616 F. App'x 710, 716–17 (5th Cir. 2015) (finding no "basis for concluding that [defendant] is likely to establish even a colorable federal contractor defense" and denying stay request).

Here, GE fails to demonstrate any possibility of success. Although the Court found GE's basis for removing this case was not unreasonable "*at the time of removal*," the Court also explained that "the caselaw overwhelmingly supports remand." [DE 58 at 775–76 (emphasis added)]. In its briefing, GE still fails to cite any cases "in which courts have denied a plaintiff's motion to remand even though the plaintiff has waived the claims which provided the basis for officer removal." [DE 58 at 769]. The reason is obvious: a removing party cannot assert a defense against a claim which simply does not exist in the case.

8

In the absence of supporting authority, GE insists that "Mr. Horton's own statements create an inextricable link between Plaintiff's current claims and Mr. Horton's Navy exposure." [DE 65 at 856]. Thus, "there is a likelihood that at least a portion of Mr. Horton's exposure to asbestos arises from GE's actions while acting under the color of a federal officer." [*Id.*] But even assuming GE could show that most of Mr. Horton's asbestos exposure occurred while he served in the Navy, GE would not be able to plausibly raise the government contractor defense against Hortons' claims for asbestos exposure in Kentucky. That is because any liability imposed on GE would not be based on GE's "performance of a government [] contract." *Bennett v. MIS Corp.*, 607 F.3d 1076, 1089 (6th Cir. 2010).

The Court's analysis of the first *Nken* factor presents an alternative basis to deny GE's motion. Even if the Supreme Court were to reverse *Harrison*,[6] the Court in *Coinbase* observed that "nearly every circuit has developed a process by which a district court itself may certify that an interlocutory appeal is frivolous" to prevent strategic delays. *Coinbase*, 599 U.S. at 745. *See, e.g., Apostol v. Gallion*, 870 F.2d 1335, 1339 (7th Cir. 1989) ("Courts are not helpless in the face of manipulation. . .. [A] district court may certify to the court of appeals that the appeal is frivolous and get on with the trial."). The Sixth Circuit has suggested that a district court has discretion to certify appeal on qualified immunity grounds as frivolous and begin trial. *See Yates v. City of Cleveland*, 941 F.2d 444, 448–49 (6th Cir. 1991). *Accord Dickerson v. McClellan*, 37 F.3d 251, 252 (6th Cir.1994) (citing *Yates* and observing that "this court has suggested in the past that a district court may have jurisdiction to certify an interlocutory appeal from the denial of qualified immunity as frivolous").

---

[6] *Express Scripts, Inc., et al., Petitioners v. California*, 25-327 (U.S. Sep. 18, 2025) (docketing petition for certiorari).

9

Nevertheless, without clear guidance from the Sixth Circuit as to whether district courts may certify interlocutory appeals under 28 U.S.C. § 1447(d) as frivolous, the Court does not make that determination here. The Court merely notes, as the court in *Yates* observed, that such "appeals can be employed for the sole purpose of delaying trial." *Yates*, 941 F.2d at 448. This delay is "often to the disadvantage of the plaintiff . . .. During the appeal memories fade, attorneys' meters tick, judges' schedules become chaotic (to the detriment of litigants in other cases). Plaintiffs' entitlements may be lost or undermined." *Id.* (quoting *Apostol v. Gallion*, 870 F.2d 1335 (7th Cir.1989) (providing that in the Seventh Circuit a district court may certify an appeal as frivolous)).

   *2. The remaining Nken factors weigh against a stay*

In evaluating the harm that will occur depending on whether the stay is granted, courts look to three factors: (1) the substantiality of the injury alleged; (2) the likelihood of its occurrence; and (3) the adequacy of the proof provided. *Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991). Moreover, "[t]he probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiffs will suffer absent the stay." *Id.*

Here, GE speculates that "[d]uring the pendency of the appeal, the [state court] could . . . rule on various substantive and procedural motions, including dispositive motions that require the adjudication of the parties' claims and defenses." [DE 60-1 at 790 (citing *Delaware ex rel. Jennings v. BP Am. Inc.*, No. CV 20-1429-LPS, 2022 WL 605822, at *3 (D. Del. Feb. 8, 2022))]. "Litigating this matter in the state forum as opposed to the federal forum, where GE has a right to have its federal officer defense adjudicated, while the remand issue is on appeal, may result in the improper resolution of issues and claims by the state court which may conflict with this Court's authority and GE's right to defend itself." [DE 65 at 856].

10

The Court finds that GE's vague assertions do not demonstrate a high degree of harm, much less harm that is "irreparable." *Griepentrog*, 945 F.2d at 154. First, GE does not specify what issues and claims would be improperly resolved without consideration of GE's federal officer defense. Tellingly, GE does not argue that raising the defense would eliminate any claims on a dispositive motion, or that it would somehow affect the scope of discovery. As explained above, there are no claims to which GE could assert the defense. And evidence of Mr. Horton's potential exposure to asbestos in the Navy will be relevant and beneficial to GE regardless of whether it can assert its defense.

Second, unlike in the context of arbitration, GE's ability to raise a federal defense in federal court (assuming it has one) is not irretrievably lost by remanding this action to state court. In the event the Sixth Circuit reverses the Remand Order, GE will be able to assert its defense once the case is removed. *See Doe v. Univ. Health Sys., Inc.*, No. 3:23-CV-357-KAC-DCP, 2024 WL 3050367, at *1 (E.D. Tenn. Mar. 15, 2024) ("[T]here is no irreparable harm because Defendant is not inhibited from appealing the Court's Remand Order."). Indeed, in the Remand Order, this Court provided that "in the event that Horton 'later attempt[s] to reverse course'" by bringing claims arising from Mr. Horton's exposure in the Navy, "and [is] allowed to do so by the state court despite [her] express claim disclaimer, [GE] can seek removal once again." [DE 58 at 774]. *See Griepentrog*, 945 F.2d at 154 ("The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.").

In contrast to the speculative harm to GE, Horton articulates substantial harm likely to result if this case is stayed indefinitely:

> The allegations against the Defendants arise from negligent conduct that occurred over half a century ago, and the individuals who might possess relevant knowledge

11

> are now of advanced age. Indeed, Barney Horton, Jr. died after this case was filed. Plaintiff, Linda Horton, herself is 76 years old. Any delay in her case not only threatens the integrity of the evidentiary record but also risks depriving her of an opportunity to have her case heard. The cumulative risks of witness mortality, fading recollections, and declining physical abilities of elderly witnesses underscores the real and substantial harm that would result from a stay.

[DE 64 at 819]. *Cf. Yates*, 941 F.2d at 448. The passage of time has already diminished the evidence available to Horton, the risk that it will continues to do so is substantial. *Griepentrog*, 945 F.2d at 154 ("In order to substantiate a claim that irreparable injury is likely to occur, a movant must provide some evidence that the harm has occurred in the past and is likely to occur again.")

In response, GE argues that "[s]taying this case will also benefit the Plaintiff, as it will reduce the risks of duplicative litigation and potentially inconsistent rulings." DE 60-1 at 791. This is the same argument GE makes under the last *Nken* factor. *Id.* at 792 ("[A] stay would be in the public's best interest "because it would avoid potentially duplicative litigation in the state courts and federal courts, thereby conserving judicial resources and promoting judicial economy."]. The Court agrees with GE that the interests of judicial economy are aligned with that of the public and the plaintiff. Once again, however, GE fails to demonstrate that inconsistent outcomes and duplicative proceedings are substantial or likely on the facts of this case. In any event, it is equally true that the public has an interest in allowing plaintiffs like Horton to continue to prosecute actions alleging "exposure to [Defendants'] asbestos containing products." [DE 1-2 at 27]. *Cf. Harrison*, 139 F.4th at 772–73 (explaining the district found that "[t]he public interest favored continuing with the litigation to abate an ongoing public health crisis to which Defendants are alleged to have contributed").

Accordingly, the Court finds that the each of the *Nken* factors weigh against granting GE's motion to stay pending appeal.

## III.  CONCLUSION

The Court, having considered the parties' briefings and being otherwise sufficiently advised, **ORDERS** as follows:

(1) GE's request for a stay pending appeal [DE 60] is **DENIED**.

(2) This case is **REMANDED** to Jefferson Circuit Court.

Rebecca Grady Jennings, District Judge
United States District Court

November 18, 2025

Cc: Jefferson Circuit Court, Case No. 24-CI-008335